UNITED STATES of America,
Plaintiff-Appellee,

v.

Nicholas SEREGOS,
Defendant-Appellant.

No. 732, Docket 80–1403.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1981.

Decided July 28, 1981.

Rehearing and Rehearing In Banc Denied
Sept. 14, 1981.

**34**

John D. Gordan, III, New York City, (Laurie E. Foster, New York City, of counsel), for defendant-appellant.

Richard A. Mescon, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, of counsel; Mary Jo White, Asst. U. S. Atty., New York City, on the brief), for plaintiff-appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and NEAHER, District Judge.[*]

NEAHER, District Judge:

This appeal presents another facet of the unlawful activity "that has plagued waterfront businesses in New York and New Jersey." See *United States v. Clemente*, 640 F.2d 1069, 1071 (2d Cir. 1981). The actors here were all businessmen on the waterfront who might have been expected to shun the illicit conduct which led to appellant's indictment and conviction.

Appellant (hereinafter "Seregos") was convicted after a bench trial in the Southern District of New York before Lawrence W. Pierce, J., for traveling from New Jersey to New York to facilitate the payment of a commercial bribe and conspiracy to commit that offense, 18 U.S.C. §§ 1952, 2 and 371, in connection with a business transaction between a shipping company and a stevedoring concern. Since appellant challenges the sufficiency of the evidence to support his conviction, a more detailed recital of the essential facts established at trial is required. The evidence must, of course, be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed.2d 680 (1942).

In 1976, and for some years before, Seregos was president of Jackson Engineering Co., a ship repair business founded by his father in Hoboken, New Jersey, in which State Seregos lives and works. Seregos' difficulties began when he was induced to assist the carrying out of a corrupt kickback arrangement between two other businessmen, who later testified against him at trial after pleading guilty to mail fraud charges. One of these businessmen was Edward Pierson, then an executive of Moore-McCormack Lines, whose terminal and office was in Brooklyn; the other was Richard Weeks, president of Weeks Stevedoring Co., headquartered in New Jersey.

In 1973 Pierson and Weeks had negotiated the rental of a Weeks Stevedoring Co. floating crane for use by Moore-McCormack during a two-year period with three six-month renewal options. The rental to be paid Weeks was $15,500 monthly, a figure that included a $1500 per month kickback to Pierson to be paid in cash. Weeks had difficulty raising the cash to make the kickback payments and by 1976 had fallen behind by some $18,000. Pierson then sought the assistance of William Montella,[1] who suggested that Seregos might be able to provide a false invoice that Pierson proposed as a way to raise cash for Weeks.

Seregos, testifying in his own behalf, denied knowledge of the illicit arrangement between Weeks and Pierson, maintaining that his only contacts were with Montella, not Pierson. He admitted, however, that after a series of telephone conversations with Montella and an inspection of the Weeks crane at Moore-McCormack's Brooklyn terminal, he submitted a Jackson Engineering Co. invoice to Weeks Stevedoring

---

[*] Honorable Edward R. Neaher, Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. Montella, an employee of Quin Marine Division of McGrath Industries, was a key government witness in *United States v. Scotto*, 641 F.2d 47 (2d Cir. 1980), cert. denied, —— U.S. ——, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), and *United States v. Clemente, supra.*

for repairs to the crane totaling $25,795, which in fact were never performed. The books of Jackson Engineering and other trial exhibits reflected that the invoice was paid by Weeks by check dated December 2, 1976.

Seregos also admitted that on December 3 he prepared two Jackson Engineering checks, each in the amount of $9,027.50, one drawn to James Cannino and the other to Alvin Raphael. He testified he gave both to Cannino on December 7 and received a package containing $18,000 in cash, which he then delivered to Montella in Brooklyn. Seregos further admitted meeting Pierson and Montella that night at Ponte's restaurant in Manhattan, but testified he stayed only five minutes and there was no discussion of money.

Pierson, testifying for the government, contradicted Seregos' disclaimer of knowledge regarding the kickback arrangement. According to Pierson, Seregos came to his office at the Moore-McCormack terminal in Brooklyn, in August or September 1976, where Pierson told him that he "had a private arrangement with Mr. Weeks, and I needed an invoice because he had to pay me some money . . . and could he, Mr. Seregos, write up an invoice on the crane." Subsequently, according to Pierson, Seregos delivered the invoice, dated October 18, 1976, to Pierson at the latter's office and Pierson later gave it to Weeks, who said it would be "okay." Finally, Pierson testified, it was Seregos who arranged to meet him at Ponte's restaurant and delivered to him in the men's room the envelope containing the $18,000 in cash.

The conflict in the testimony bearing upon Seregos' knowledge and intent obviously presented an issue of credibility for the trier of the fact. *United States v. Minor*, 398 F.2d 511, 512 (2d Cir. 1968), aff'd, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). In resolving that issue against Seregos, Judge Pierce properly considered appellant's demeanor, his qualified answers and his admitted false testimony under oath before the Waterfront Commission, as well as the inferences that could reasonably be

drawn from Seregos' readiness to participate in plainly dishonest conduct. Factual findings by the trial judge as to the requisite knowledge and intent to engage in unlawful conduct may not be set aside unless on review of the record they are found to be clearly erroneous. *United States v. Rischard*, 471 F.2d 105, 107 (8th Cir. 1973); see *United States v. Abel*, 258 F.2d 485, 494 (2d Cir. 1958), aff'd, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). See also *United States v. Sheard*, 473 F.2d 139, 146 (D.C.Cir. 1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2784, 37 L.Ed.2d 404 (1973). On this record such a finding cannot be made, and the critical issues of credibility having been resolved against appellant, the evidence was clearly sufficient to establish all elements of the offenses charged.

We now turn to the three principal arguments advanced by appellant, none of which we conclude warrants reversal of his conviction.

*Lack of Fair Notice*

 Appellant contends that he did not have fair notice that his conduct in the latter part of 1976 was in violation of the Travel Act. That contention is premised on this Court's decision on July 16, 1976, in *United States v. Brecht*, 540 F.2d 45 (2d Cir. 1976), cert. denied, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977), holding that the Travel Act did not apply to acts of commercial bribery in violation of the New York Penal Law. The *Brecht* court, however, acknowledged that its ruling was in conflict with the prior decision of the Fourth Circuit in *United States v. Pomponio*, 511 F.2d 953 (4th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975), supra, at 48, which had held that the Travel Act applied not only to bribery of public officials but extended to interstate travel to facilitate commercial bribery as defined in N.Y. Penal Law § 180.00, the predecessor of the statutes involved in this case. 511 F.2d at 955-56.

This Court's decision in *Brecht* was subsequently overruled by the Supreme Court in *Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), which, af-

ter noting the conflict among circuits, upheld the views of the Fourth and Fifth Circuits that bribery of private employees prohibited by State criminal statutes could also violate the Travel Act. See *United States v. Pomponio, supra,* and *United States v. Perrin,* 580 F.2d 730 (5th Cir. 1978).

Following the Supreme Court's ruling in *Perrin,* the government filed a superseding indictment on February 29, 1980, charging appellant with the Travel Act offenses of which he was convicted.[2] Relying on *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), and *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), his basic contention is that the *Perrin* ruling was "an unforeseeable judicial enlargement of a criminal statute," which, when "applied retroactively, operates precisely like an *es post facto* law" forbidden by the Constitution, quoting from *Bouie, supra,* 378 U.S. at 353, 84 S.Ct. at 1702. Our reading of those cases satisfies us that they provide no support for a claim of lack of fair warning here. Granted that the deprivation of such a right can result from "vague statutory language" or "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language," *Bouie, supra,* at 352, 84 S.Ct. at 1702, neither element is present in this case.

As the Supreme Court pointed out in *Perrin,* at the time the Travel Act was enacted in 1961, both "federal and state statutes had extended the term bribery well beyond its common law meaning." 444 U.S. at 43, 100 S.Ct. at 314. And New York as early as 1905 was one of the States which had outlawed commercial bribery generally. *Id.* at 44, n.9, 100 S.Ct. at 315, n.9. Thus there is nothing vague or indefinite about "bribery" as used in the Travel Act; nor can *Perrin* be viewed as an unforeseeable judicial expansion of the scope of the Act in light of *Pomponio, supra,* which dealt specifically with the New York commercial bribery statute. And in view of Seregos' admittedly illicit activities, which we conclude below violated that statute, the argument that he was denied fair notice must be rejected.[3]

*Absence of "Bribery" Under State Law*

■ Appellant argues next that the underlying transaction between Weeks and Pierson that he facilitated did not constitute the crime of commercial bribery under State law. Essentially he contends that the kickback payment arrangement was actually either a fraud upon or embezzlement from Moore-McCormack and lacked the element of "intent to influence" necessary for commercial bribery under the New York statute.[4]

We disagree. Accepting as we must the trial court's findings that the $1500 monthly kickback paid by Weeks to Pierson person-

**2.** Seregos was originally indicted July 24, 1979 on five counts of mail fraud based on the same transactions as the Travel Act charges.

**3.** Seregos, of course, was not required to know that his activities became a federal crime because of interstate travel, even though the government had to prove such travel as an essential element. *United States v. Perrin, supra,* 580 F.2d at 737; *United States v. Marquez,* 424 F.2d 236, 240 (2d Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970).

**4.** N.Y. Penal Law criminalizes both the giving and receiving of a commercial bribe in separate provisions as follows:
"§ 180.03 Commercial bribing in the first degree
A person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the con-

sent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars."
"§ 180.08 Commercial bribe receiving in the first degree
An employee, agent or fiduciary is guilty of commercial bribe receiving in the first degree when, without the consent of his employer or principal, he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that such benefit will influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit solicited, accepted or agreed to be accepted exceeds one thousand dollars."
Each offense is a class A misdemeanor.

ally was an integral part of the negotiations resulting in the crane rental agreement, without the knowledge or consent of Pierson's employer, all the requisite elements of commercial bribing and commercial bribe receiving were present. Section 180.03 is drawn in terms of "confer[ring] any benefit" upon an "employee, agent or fiduciary . . . with intent to influence his conduct in relation to his employer's . . . affairs . . . ." Weeks' conduct precisely satisfied those terms. By agreeing to Pierson's proposal, Weeks not only assured the contract for his company but also provided the means whereby Pierson could receive the benefit of the kickback payments unknown to his employer. And Weeks' acquiescence in the scheme clearly influenced Pierson to commit Moore-McCormack to rent the crane at the higher monthly rate.[5] That the source of the funds was Pierson's employer does not mean that Weeks and Pierson were not engaging in commercial bribery. See *Palmer v. Doull Miller Co.*, 233 F. 309, 312 (S.D. N.Y.1916) (construing predecessor bribery statute, N.Y. Penal Law § 439, as condemning scheme to charge corporate customer inflated factor's commissions so as to provide undisclosed payments by factor to customer's president). Concluding that the arrangement for the kickback payments was commercial bribery under New York law, we find it unnecessary to consider whether such conduct also violated other criminal laws, as appellant suggests.

*Impermissible Use of Immunized Testimony*

Appellant's final argument accuses the government of having cross-examined him at trial regarding matters as to which he had previously testified under a grant of immunity before the grand jury which indicted Anthony Scotto and as a government witness at Scotto's trial.[6] In addition, Seregos claims that the government's decisions not to renew an offer of a misdemeanor plea he had previously rejected, and not to call William Montella as a rebuttal witness at his trial, were also tainted by knowledge of his immunized testimony imputable to the prosecutor.

In view of these allegations, Judge Pierce properly conducted a *Kastigar*[7] hearing to determine whether the government could meet its burden of showing that the evidence used against Seregos was free from the taint of compelled testimony. After two days of testimony from the Assistant United States Attorney responsible for Seregos' prosecution, and the F.B.I. case agent who conducted the investigation, both of whom he found "highly credible," Judge Pierce concluded in a detailed opinion that the evidence against Seregos was independently derived from subpoenaed records and documents and the debriefing of Pierson and Weeks and was not tainted by Seregos' testimony in the Scotto case. He also found that the prosecutor and agent had sufficiently insulated themselves from the Scotto proceedings and those responsible for that prosecution. From our independent review of that record we see no reason to question Judge Pierce's findings. See *United States v. King*, 560 F.2d 122, 131 (2d Cir.), *cert. denied*, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977). Accordingly, we find this claim to be without merit.

We have considered appellant's other contentions and find them also to be without merit.

Affirmed.

---

**5.** Weeks testified that absent the kickback payments to Pierson, the rental charge to Moore-McCormack would have been "about $14,000." Tr. 320.

**6.** See *United States v. Scotto, supra*, n.1.

**7.** See *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972).