Wayne C. JOHNSON,
Defendant-Appellant,

v.

STATE of Delaware, Plaintiff-Appellee.

Edward R. SCOTT, Defendant-Appellant,

v.

STATE of Delaware, Plaintiff-Appellee.

Alexander McCANTS–BEY,
Defendant-Appellant,

v.

STATE of Delaware, Plaintiff-Appellee.

Chester L. WOULARD,
Defendant-Appellant,

v.

STATE of Delaware, Plaintiff-Appellee.

Supreme Court of Delaware.

Submitted: May 16, 1983.*

Decided: Nov. 17, 1983.

Submitted on Motion to Dismiss
Certain Appeals: Dec. 2, 1983.

Submitted on Cross Motions
for Reargument: Dec. 16, 1983.

Revised on Motion to Dismiss and
for Reargument: Jan. 17, 1984.

* No. 242, 1983 (*Chester L. Woulard v. State of Delaware*) was consolidated by Order dated August 29, 1983. The consolidated appeals also included No. 394, 1982 (*Gary J. Potter v. State of Delaware*) and No. 9, 1983 (*Daniel C. Molitor v. State of Delaware*), which were both dismissed following this Court's original decision of November 17, 1983. See footnote 3A below.

Edmund M. Hillis, Asst. Public Defender, Wilmington, for defendants-appellants Johnson and Scott.

Arlen Mekler, Wilmington, for defendant-appellant McCants-Bey.

Chester L. Woulard, pro se.

John A. Parkins, Jr., Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C.J., McNEILLY, HORSEY and MOORE, JJ., and HART-NETT, Vice Chancellor, constituting the Court en Banc.

HORSEY, Justice:

We are asked to determine whether the Department of Correction's retroactive application of our decision in *Richmond v. State*, Del.Supr., 446 A.2d 1091 (1982) operates as an increase in punishment violating the *Ex Post Facto* Clause or the Fourteenth Amendment Due Process Clause of the Federal Constitution. We hold that in the interest of fundamental fairness, the State's unilateral application of *Richmond* retrospectively to eliminate accrued "good time credits" constitutes an "*ex post facto*-like" violation of defendants' Fourteenth Amendment rights to due process.

I

Defendants were convicted of various criminal offenses and, as punishment, were sentenced to minimum mandatory prison terms. As a result of a ruling in an unreported Superior Court case,[1] the Department of Correction applied "good time" and "merit" credits to defendants' terms of confinement, thereby accelerating their release dates.

1. In *Kennish v. State*, Del.Super., C.A. No. 5089, Bifferato, J. (Dec. 7, 1976), the Superior Court held that a person sentenced to a minimum mandatory prison term "without benefit of probation or parole" is still entitled to good time and merit credits for the purpose of gaining a "conditional release" even if such release would occur prior to service of the full mini-

On June 2, 1982, this Court held in *Richmond v. State, supra,* that minimum mandatory prison sentences may not be reduced by credits earned for good behavior ("good time credits").[2] After the issuance of *Richmond,* the Department of Correction, of its own accord, recomputed the expiration dates of the defendants' sentences and eliminated any good time credits that had been applied to the minimum mandatory portions of their prison terms.

Defendants Wayne C. Johnson, Edward R. Scott, Alexander McCants-Bey and Chester L. Woulard filed separate Rule 35(a)[3] motions for postconviction relief seeking restoration of good time credits accumulated prior to the *Richmond* decision. Defendants Johnson, Scott and Woulard argue that elimination of accrued good time credits violates the Federal Constitution's ban against *ex post facto* legislation. In each instance, the Superior Court denied the motion, finding no *ex post facto* violation. Defendants' appeals have been consolidated for the purpose of decision, with defendants McCants-Bey and Woulard filing separate briefs in support of their appeals.[3A]

## II

### A.

Article I, § 10 of the United States Constitution prohibits a state from enacting any *ex post facto* law and does not, by its own terms, apply to judicial decisions such as *Richmond. Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977); *Frank v. Mangum,* 237 U.S. 309, 314, 35 S.Ct. 582, 584, 59 L.Ed. 969 (1915); *Ross v. Oregon,* 227 U.S. 150, 163, 33 S.Ct. 220, 223, 57 L.Ed. 458 (1913). Nevertheless, judicial decisions may have the effect of *ex post facto* legislation and thus be found to violate a defendant's rights to due process under the Fourteenth Amendment. However, the Due Process Clause protects an individual from a retroactive judicial ruling only when that ruling serves to deprive the individual of fair warning that his conduct will give rise to criminal liability.

The seminal case in this area is *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). In *Bouie,* the United States Supreme Court held that:

[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10 of the Constitution forbids. An *ex post facto* law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action," or "that *aggravates* a *crime,* or makes it *greater* than it was, when committed." *Calder v. Bull,* 3 Dall. 386, 390,

mum mandatory term. Although we do not, as a practice, cite unreported decisions, we do so in this appeal solely because the Department of Correction premised its authority for reducing minimum mandatory prison terms by earned good time and merit credits on the unreported ruling in *Kennish.*

2. "Good time" is the reduction in sentence earned by prisoners for good behavior [11 *Del.C.* § 4382] and participation in certain rehabilitative programs [11 *Del.C.* § 4348].

3. Criminal Rule 35 provides in pertinent part:
    (a) *Postconviction Remedy.* Any person who has been sentenced by the Court may apply by motion for postconviction relief for any meritorious claim challenging the judgment of conviction including claims: (i) that the conviction was obtained or sentence imposed in violation of the Constitution and laws of this State or the United States....

3A. Gary J. Potter and Daniel C. Molitor were also parties to the Superior Court postconviction relief proceedings and were appellants in these consolidated appeals: Appeal No. 349, 1982 (*Gary J. Potter v. State*) and Appeal No. 9, 1983 (*Daniel C. Molitor v. State*). However, on the State's motion to vacate this Court's Opinion in No. 394, 1982 and in No. 9, 1983 and to dismiss those appeals on grounds of mootness, this Court, by Order dated December 20, 1983, granted such relief and dismissed the appeals of Gary J. Potter and Daniel C. Molitor.

1 L.Ed. 648 [footnote omitted]. If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

378 U.S. at 353.

The due process approach set forth in *Bouie* was adopted by this Court in *State v. Dickerson,* Del.Supr., 298 A.2d 761 (1973). In *Dickerson,* we held that "[I]ndirectly, via the Due Process Clause of the Fourteenth Amendment, the spirit of the *ex post facto* guaranty, and the resultant ban against the retrospective increase of punishment for a crime, is made to apply as a prohibition against judicial action having such effect." [4] *Id.* at 768.

■ Applying the due process analysis of *Dickerson* and *Bouie* to the facts of this case, we hold that defendants Johnson, Scott and Woulard were denied due process by the Department of Correction's unilateral decision to give retrospective effect to *Richmond.* We conclude that in the interest of fundamental fairness, the above defendants must be allowed to retain good time credits earned prior to the date of decision in *Richmond.* However, for reasons which will be discussed herein, we find that defendant McCants-Bey was not entitled to good time credits and, therefore, did not suffer a due process violation by their elimination.

## B.

■ Two inquiries are critical to a determination of a due process violation based on

an "*ex post facto*-like" judicial ruling: (1) whether the judicial action "aggravates a crime, or makes it greater than it was, when committed," *Bouie v. City of Columbia,* 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964) (citing *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798)); and (2) whether the judicial ruling was "unforeseeable." *Bouie, supra,* 378 U.S. at 553, 84 S.Ct. at 1702.

■ At the outset, the State contends that *Bouie* is limited to cases wherein the defendant has been denied constitutionally fair warning that his *conduct* is criminal. Accordingly, the State claims that the Due Process Clause is not offended by the retroactive application of *Richmond* as that decision did not alter the elements of a statutory offense. Defendants respond that a retroactive judicial interpretation of a statute which makes punishment for conduct more burdensome is within the prohibition of the *Ex Post Facto* Clause and is also violative of due process. Defendants rely primarily upon *Bouie v. City of Columbia, supra,* and *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). We read *Bouie* as requiring recognition of defendants' accrued pre-*Richmond* good time credits; but we find no due process or *ex post facto* basis for requiring defendants to be permitted to accrue good time credits after *Richmond. Weaver* is simply inapposite.[5]

In *Bouie,* the Supreme Court defined an *ex post facto* law as one which imposes punishment for an act which was not criminal when it was committed *or* which imposes additional punishment to that then prescribed. 378 U.S. at 353, 84 S.Ct. at 1702. Moreover, the Court recognized that the *ex*

---

**4.** We take this occasion to restrict the overbroad language of *State v. Moyer,* 387 A.2d 194, 197 (1978) that "It is settled that the *Ex Post Facto* Clause applies to judicial actions as well as legislative" to the due process limitation of *Dickerson* upon which that language was based.

**5.** *Weaver* holds that legislation which deprives a prisoner of good conduct time earned under a

repealed statute violates the *Ex Post Facto* Clause by imposing "punishment more severe than the punishment assigned by law when the act to be punished occurred." 450 U.S. at 31, 101 S.Ct. at 965. However, *Weaver* does not enlarge on *Bouie* or impinge on *Marks, Mangum* and *Ross.* (*See* II-A, *supra*).

*post facto* limitation encompasses judicial action having an *"ex post facto* -like" effect.[6] Following the decision in *Bouie*, this Court in *State v. Dickerson*, Del.Supr., 298 A.2d 761 (1973) held that the Due Process Clause proscribes judicial action having the *effect* of a retrospective increase in punishment. *Id.* at 768. Therefore, it seems clear that a due process violation under *Bouie* and *Dickerson* occurs when the *result* of a judicial ruling enhances the punishment for a previously committed crime.

At the time the defendants (with the exception of McCants-Bey) committed their offenses and at time of their sentencing, the State Department of Correction customarily reduced all minimum mandatory sentences by the amount of good time credits earned by the offender.[7] After the issuance of our decision in *Richmond*, though, defendants' earned credits were eliminated, increasing their sentences by eight months to approximately twenty months. We find this retrospective increase to be an *"ex post facto* -like" due process violation as defendants were subject to punishment more onerous than that required by the law in effect on the date of the offense. Accordingly, we hold that defendants Johnson, Scott and Woulard are entitled to good time credits accrued prior to our decision in *Richmond*, but not to post-*Richmond* credits, for reasons which follow.

There is merit in the State's argument that *Richmond* was foreseeable in light of this Court's decisions in *State v. Spence*, Del.Supr., 367 A.2d 983 (1976) and *Woodward v. State*, Del.Supr., 416 A.2d 1225 (1980). In *Spence*, we held that a mandato-ry life sentence without benefit of parole could not be reduced by good time credits. Similarly, in *Woodward*, we held that a minimum mandatory prison term would not be diminished by good time credits for the purpose of determining eligibility for parole. The State argues that these decisions provided defendants with fair warning that credits earned for good behavior would not reduce a minimum mandatory sentence, hence, no due process violation occurred by the retroactive application of *Richmond*.

The State's foreseeability argument has merit as applied to defendants' post-*Richmond* credits but not as applied to defendants' accrued pre-*Richmond* credits. In light of the Department of Correction's unilateral application of *Kennish*, until this Court's decision in *Richmond*, we conclude that it would be improper and unfair to alter or enlarge defendants' sentences by cancelling earned and accumulated good time credits. Therefore, we hold that the Department's application of *Richmond* retrospectively operates as an increase in punishment which violates defendants' Fourteenth Amendment right to due process. However, because the result in *Richmond* was foreseeable, we find no due process violation in not permitting good time credits to accrue after *Richmond*.

With respect to defendant McCants-Bey, we hold that he has no right to pre-*Richmond* good time credits as he committed his crime and was sentenced prior to the date of decision in *Kennish*. *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Since we find that McCants-Bey has no due process claim, we

---

**6.** As the Supreme Court stated in *Bouie*, "... if the *result* ... were attained by an exercise of the State's legislative power, the transgression of the 14th Amendment would be obvious" and "the violation is none the less clear when the *result* is accomplished by the State Judiciary in the course of construing an otherwise valid ... state statute." 378 U.S. at 355, 84 S.Ct. at 1703 (emphasis added).

**7.** The Department did so in reliance on *Kennish*. *See* note 1, *supra*. Defendants argue that

the Department's then policy on good time credits must be deemed to have been taken into consideration by defendants and their counsel in their plea bargaining. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Defendants Johnson's and Woulard's convictions were based on pleas while defendant Scott's conviction was based on a jury verdict.

need not address his argument that forfeiture of good time credits without a hearing violates substantive and procedural due process.

\*    \*    \*    \*    \*    \*

Affirmed in part; Reversed in part.

*Upon Cross Motions for Reargument*

The State argues that this Court's foreseeability rationale "for not permitting [defendants'] good time credits to accrue after *Richmond* " is equally applicable under *Bouie* to justify the elimination of defendants' pre-*Richmond* accrued credits. The State contends that the Court has "misapplied" *Bouie* in determining whether a due process violation has occurred based on an "ex *post facto* -like" judicial ruling. According to the State, the *Bouie* retroactivity test, as applied to this case, is simply whether the judicial ruling of *Richmond* was "unforeseeable." Conversely, if defendants had "fair warning" of *Richmond*'s holding that minimum mandatory terms of imprisonment are not subject to reduction for good time credits earned under 11 *Del.C.* §§ 4382 and 4348, *Kennish* notwithstanding, then the Department of Corrections' retroactive elimination of defendants' credits was proper under *Bouie*. There are several answers to this argument.

*One,* as we read *Bouie,* foreseeability is that which is foreseeable to the "man of common intelligence." Accordingly, as this Court had not spoken directly on the issue raised in *Richmond* and the Superior Court had in *Kennish, Kennish* was the law which was clearly in effect at the time the defendants committed their offenses. Thus, the "common man" in Delaware logically would look to the law in effect, *i.e., Kennish,* for notice of criminal liability and punishment. Therefore, what this Court has stated above concerning foreseeability is consistent with foreseeability statements in *Bouie* because this Court only addressed foreseeability after *Richmond.*

*Two,* foreseeability is but the second part of a two-part test in *Bouie* for determining a due process violation based on an *ex post facto* -like judicial ruling. The State has failed to apply the second part of the test in *Bouie,* which is the *effect* of the judicial action, *i.e.,* does it aggravate a crime or make it greater than it was when committed. Here, it seems clear that to apply *Richmond* retrospectively to these defendants has the effect of a retrospective increase in punishment. *State v. Dickerson,* Del.Supr., 298 A.2d 761 (1973). Hence, foreseeability is not the end of the inquiry where the effect of a retrospective application of a judicial ruling is an increase in punishment.

*Three,* regardless of whether defendants had "fair warning" that *Kennish* was not good law and would be eventually overruled, the fact is that defendants' sentences had been reduced before *Richmond* overruled *Kennish.* Thus, fundamental fairness, as well as due process, requires such reduced sentences not be cancelled after having been granted.

*Four,* while *Bouie* holds that due process prohibits application of a judicial action retroactively if the judicial action is unforeseeable, the corollary is not necessarily true; *i.e.,* that if the judicial action is foreseeable, it *must* be applied retroactively even where the result of the application is a retroactive increase in punishment. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) and *United States v. Seregos,* 2nd Cir., 655 F.2d 33 (1981) are inapposite. *Rose* is distinguishable for, contrary to defendant Rose's argument that a Tennessee statute proscribing "crimes against nature" *could* be given a narrow interpretation, the Tennessee Supreme Court had, on two prior occasions, ruled that the statute in question would be given *broad* effect. *Seregos* is distinguishable for, although defendant Seregos was relying on *United States v. Brecht,* 2d Cir., 540 F.2d 45 (1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51

L.Ed.2d 573 (1977) (holding that the Travel Act did not apply to acts of commercial bribery), the *Brecht* court *expressly noted* that its ruling was contrary to decisions in other circuits. Moreover, New York State courts had interpreted the term "bribery" to include commercial bribery. Therefore, unlike the *Johnson* defendants, Seregos was given fair warning that his conduct could give rise to criminal liability.

Defendants also seek reargument, contending that to apply *Richmond* even prospectively to them is a denial of due process. Because their crimes occurred before *Richmond,* defendants argue that irrespective of *Richmond*'s foreseeability, any deprivation of good time is an increase in punishment and an erosion of the protection afforded them by *Bouie* and *Dickerson.*

Defendants thereby ignore the basis for our restoration of their accrued pre-*Richmond* good time credits: that to give *Richmond* retrospective application constitutes an *ex post facto*-like violation of defendants' rights to due process. Since that was the sole basis for a finding of denial of due process, it does not follow that *Richmond* cannot be applied prospectively so as to cut off any further accrual of good time credits by defendants. While fundamental fairness also requires that pre-*Richmond* accrued and credited good time not be retroactively withdrawn, we find no unfairness in declining to permit an overruled decision, *Kennish,* to be given prospective application. And *Kennish* was the sole basis for defendants' right to accrue good time credits against their minimum mandatory sentences prior to *Richmond.*

The State's motion for reargument is DENIED; and defendants' motion for reargument is DENIED.