Chester L. WOULARD, Plaintiff,

v.

Warden Walter REDMAN, et al., Defendants.

Wayne C. JOHNSON, Plaintiff,

v.

John L. SULLIVAN, et al., Defendants.

Edward R. SCOTT, Plaintiff,

v.

John L. SULLIVAN, et al., Defendants.

Civ. A. Nos. 83–476 MMS, 83–478 MMS and 83–479 MMS.

United States District Court, D. Delaware.

April 5, 1984.

Chester L. Woulard, pro se.

Donna Rochelle, Wilmington, Del., for plaintiff Wayne C. Johnson and plaintiff Edward R. Scott.

John A. Parkins, Jr., Chief of Appeals Division, Dept. of Justice, Wilmington, Del., for all defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiffs in three related prisoner civil rights suits seek money damages against various state officials under 42 U.S.C. § 1983. The three cases have been consolidated for purposes of this opinion. Each plaintiff alleges that his constitutional rights were violated when the Delaware Correctional Center cancelled his previously accrued good time credits. Although those credits were later restored to each of the plaintiffs by the Delaware Supreme Court in *Johnson v. State*, 472 A.2d 1311, No. 350, 1982 (Del. Nov. 17, 1983), plaintiffs now seek monetary relief, presumably as compensation for the extra time they spent in jail.[1] The Magistrate has issued a Report and Recommendation in each of the three cases recommending that the Court grant defendants' summary judgment motions. Plaintiffs Johnson and Scott, but not plaintiff Woulard (who is proceeding *pro se*), have filed objections to the Magistrate's report.

## Factual Background

Plaintiffs were all sentenced under Delaware's minimum mandatory sentence statute, 11 *Del.C.* § 832(c).[2] The Department of Correction, at the time of plaintiffs' sentencings, had been awarding accelerated release dates to prisoners serving minimum mandatory terms pursuant to the Delaware good time credit statute, 11 *Del.C.* §§ 4381–84.[3] This Department policy accorded with the ruling in an unpublished Superior Court decision, *Kennish v. State*, No. 5089 (Del.Super. Dec. 7, 1970), which held that good time credits were available to persons sentenced to minimum mandatory prison terms. Each of the three plaintiffs received early release dates from the Department of Correction pursuant to Department policy.

On June 2, 1982, the Delaware Supreme Court overruled *Kennish*, holding that good time credits could not be awarded to prisoners serving minimum mandatory terms. *Richmond v. State*, 446 A.2d 1091 (1982). Although the *Richmond* court did not address the retroactivity of its decision, the Department of Correction, in response to the opinion, revoked all previously awarded credits granted to prisoners serving minimum mandatory terms.

Plaintiffs filed suit in state and federal court challenging the Department of Correction's retroactive application of *Richmond* and its withdrawal of the credits previously awarded to plaintiffs. On No-

---

1. The record is silent as to how much extra time, if any, plaintiffs' spent in prison before winning their credits in *Johnson v. State*, but resolution of that question is not necessary for purposes of this opinion.

2. 11 *Del.C.* § 832(c) provides:
   The minimum sentence of imprisonment required by this section and § 4205 of this title for a first offense shall not be subject to suspension, and no person convicted under this section shall be eligible for probation or parole during the first 3 years of such sentence.

3. Under 11 *Del.C.* § 4381, a prisoner accumulates credits depending upon his good behavior and compliance with prison rules. It is undisputed in this case that plaintiffs were denied credits as a result of a general policy, not individualized decisions.

vember 17, 1983, plaintiffs won back their credits in the *Johnson* decision. The Delaware Supreme Court held in *Johnson* that the retroactive application of *Richmond* to eliminate previously earned credits was an "*ex post facto* like" violation of the due process clause. *Johnson v. State*, at 1315. The *Johnson* court, however, refused to reinstate good time credits for time served after the date of the *Richmond* decision because, the Court explained, the *Richmond* decision was "foreseeable" within the meaning of *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). *Johnson v. State*, at 1316.[4]

The Magistrate has recommended judgment in favor of defendants on the ground of good faith official immunity, reasoning that defendants could not reasonably have known that they were violating plaintiffs' clearly established constitutional rights. This Court agrees and will therefore grant defendants' motions.

**Discussion**

The test for official immunity was most recently articulated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court stated that officials are immune from liability for money damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. While recognizing that there are both subjective and objective components of good faith immunity, *id.* at 815, 102 S.Ct. at 2737, the Court explained that summary judgment could be granted based solely on objective factors. According to *Harlow*, if the law at the time an action occurred "was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he be said to 'know' that the law forbade conduct not previously identified." *Id.* at 818, 102 S.Ct. at 2738. Under such circumstances,

summary judgment is appropriate. *Id.* at 816, 818, 102 S.Ct. at 2737, 2738.

This Court does not believe that defendants should reasonably have known they were violating plaintiffs' clearly established constitutional rights. In reaching its conclusion, the Court does not decide whether, in fact, plaintiffs' constitutional rights were violated; it merely decides that resolution of the constitutional question is so difficult and uncertain that a state official in defendants' position should not be held liable for money damages.

There are, in particular, three possible theories under which plaintiff's constitutional rights may have been violated by defendants' revocation of their good time credits. None of these theories, as explained below, was so well established that defendants can be held liable for money damages. The first theory is that by increasing the punishment for conduct already committed by plaintiffs, defendants violated plaintiffs' *ex post facto* rights even though the *Richmond* decision was "foreseeable" under Delaware law. The second theory is that *Richmond* was an "unforeseeable" judicial decision, and that defendants' retroactive application of *Richmond* therefore violated plaintiffs' due process rights. The third theory of liability is the one adopted by the Delaware Supreme Court in *Johnson*. The uncertainty of the law under each theory will be explained in turn.

**I. Ex Post Facto Administrative Action**

The ex post facto implications of this case are complicated because the retroactive detriment felt by plaintiffs was neither legislative in origin nor was it the result of a purely administrative or judicial decision.

The law is clear that a legislature may not retroactively revoke previously accumulated good time credits. The Supreme Court in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981),

---

**4.** The record is unclear as to whether any of the plaintiffs were affected adversely by this limitation to the *Johnson* holding.

held that a retroactive detrimental change in the method for calculating good time credits violates the ex post facto clause. The Court explained that a criminal or penal law is an ex post facto law if it meets two elements: if it applies to events occurring before its enactment and if it disadvantages the offender affected by it. *Id.* at 29, 101 S.Ct. at 964. The defendants in *Weaver* had argued that a revocation of good time credits does not create a sufficient loss to constitute a valid ex post facto detriment. The Supreme Court explained, however, that a law need not "impair a 'vested right' to violate the ex post facto prohibition." *Id.*

> The presence or absence of an affirmative, enforceable right is not relevant ... to the *ex post facto* prohibition, which forbids imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

*Id.* at 30, 101 S.Ct. at 965. This fair notice concept is critical to a decision affecting good time credits, the Court explained, because "a prisoner's eligibility for reduced confinement is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." *Id.* at 32, 101 S.Ct. at 966.

The change in good time policy in *Weaver* was *legislatively* produced through amendment of the governing statute. Plaintiffs' suits, however, challenge an administrative action, not a legislative action. Many courts have recognized nonetheless that the ex post facto clause applies with equal force to administrative actions which have the effect of punishing or increasing the punishment for conduct occurring before the administrative change. *See Holguin v. Raines*, 695 F.2d 372, 374 (9th Cir.1982); *Geraghty v. United States Parole Commission*, 579 F.2d 238, 266 (3d Cir.1978), *vacated on other grounds*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Love v. Fitzharris*, 460 F.2d 382, 385 (9th Cir.1972), *vacated as moot*, 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973); *Piper v. Perrin*, 560 F.Supp. 253, 256 & n. 6 (D.N.H.1983). As the Third Circuit Court of Appeals stated in *Geraghty*:

> [A] similar prohibition [against ex post facto laws] applies to an increase in punishment brought about by the rule-making, the administrative equivalent of legislation. The legislature cannot, by delegation, escape constitutional limitations on its power.

579 F.2d at 266.

Were this a controversy involving an unprovoked administrative change in the state's good time credit policy, the ex post facto analysis would be straightforward under *Geraghty*. The cases at bar do not, however, simply involve an ordinary example of administrative rule-making. Unlike *Geraghty*, the rule-making in these cases flowed from the Department's response to a judicial interpretation of a statute. The Ninth Circuit Court of Appeals in *Holguin v. Raines*, 695 F.2d 372, held in a split decision that an administrative change prompted by a judicial decision is unconstitutional only if the judicial decision itself violated the due process clause under the Supreme Court cases of *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), and *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). *Holguin*, 695 F.2d at 374. The Supreme Court held in those cases that detrimental retroactive judicial decisions affecting penal statutes, although not literally forbidden under the ex post facto clause, are nonetheless unconstitutional under the due process clause if the decisions are "unforeseeable." *See Marks v. United States*, 430 U.S. at 191–92, 97 S.Ct. at 992–93; *Bouie v. City of Columbia*, 378 U.S. 347 at 353–54, 84 S.Ct. 1697 at 1702–03, 12 L.Ed.2d 894. This unforeseeability element, while related to the ex post facto clause's general concern with fair

notice, *see Weaver,* 450 U.S. at 30, 101 S.Ct. at 965, is not an independent element in a cause of action under the ex post facto clause. Under the Ninth Circuit rule, an administrative change that would otherwise violate the ex post facto clause but which was prompted by a judicial decision is unconstitutional *only if* the judicial decision itself was unforeseeable under *Marks* and *Bouie. See Holguin,* 695 F.2d at 374. Another court, however, has suggested that administrative changes taken in response to a judicial decision may violate the ex post facto clause regardless of the judicial decision's foreseeability. *See Piper v. Perrin,* 560 F.Supp. at 257, 258; *see also Holguin v. Raines,* 695 F.2d at 378 (Reinhardt, J., dissenting).

■ In face of this split in the case law, even were the Court inclined to hold that foreseeability was irrelevant to the ex post facto question surrounding the Department's action, defendants could not be held liable for a violation of the ex post facto clause. The law relating to foreseeability and judicially inspired administrative action was uncertain at the time plaintiffs were deprived of their good time credits and, in fact, remains unsettled today.

## II. Retroactive Application of Judicial Decision

■ All courts would agree that *if* a judicial decision underlying a detrimental administrative action is unforeseeable, the detrimental action would violate either the due process or ex post facto clause. Taking the law as well established that retroactive administrative changes in response to unforeseeable judicial decisions are unconstitutional, the Court cannot say that de-

fendants may be liable for money damages: a reasonable person in defendants' position, the Court holds, would not necessarily have known that the *Richmond* decision was unforeseeable.

The Delaware Supreme Court in *Johnson* has already found that *Richmond was* foreseeable.[5] Although on a federal constitutional question this Court is not bound by a state court decision, the Court finds dispositive of the good faith immunity question the fact that the Delaware Supreme Court believed *Richmond* to be foreseeable. The foreseeability question depends on an analysis of a series of state cases interpreting a state statute—a mode of analysis particularly suited for the Delaware Supreme Court. The *Johnson* court reviewed the relevant Delaware precedent under the minimum mandatory sentencing statute and concluded that *Richmond* logically and foreseeably flowed from the statute's language and the case law decided under it. This Court need not examine whether it agrees with *Johnson* on the *Marks/Bouie* foreseeability question. It suffices for good faith immunity purposes to observe that defendants cannot be held to have reasonably predicated resolution of the foreseeability question in a manner contrary to that reached by the Delaware Supreme Court.

## III. Johnson Theory of Liability

The *Johnson* court did, of course, find a constitutional violation. The constitutional violation found in *Johnson* does not, however, establish that defendants violated a "clearly established" constitutional right. The *Johnson* court conducted what appears to be a novel analysis. While holding that

---

5. The *Johnson* court found that *Richmond* was foreseeable in light of the Delaware Supreme Court's decisions in *State v. Spence,* 367 A.2d 983 (Del.1976), and *Woodward v. State,* 416 A.2d 1225 (Del.1980). *Johnson,* at 1315–1316. The Court explained:

> There is merit in the State's argument that *Richmond* was foreseeable in light of this Court's decisions in *State v. Spence* ... and *Woodward v. State* .... In *Spence,* we held that a mandatory life sentence without benefit of parole could not be reduced by good time

credits. Similarly, in *Woodward,* we held that a minimum mandatory prison term would not be diminished by good time credits for the purpose of determining eligibility for parole. The State argues that these decisions provided defendants with fair warning that credits earned for good behavior would not reduce a minimum mandatory sentence, hence, no due process violation occurred by the retroactive application of *Richmond.*
> *Id.* at 1315.

the *Richmond* decision was foreseeable, and therefore not in violation of the due process clause under established United States Supreme Court precedent, the *Johnson* court nonetheless held that because the Department had applied *Kennish* prior to the state Supreme Court's *Richmond* decision, "it would be improper and unfair to alter or enlarge defendants' sentencing by cancelling earned and accumulated good time credits." *Id.* at 1316. The *Johnson* holding was not that the Department violated the ex post facto clause under *Weaver v. Graham* (as applied to administrative agencies through *Geraghty*) or that *Richmond* violated the due process clause by reason of *Bouie* and *Marks*: either of those analyses would have required the granting of *all* good time credits to prisoners sentenced during the time after *Kennish* and before *Richmond*. The prisoners would, under those analyses, have been entitled to the same degree of punishment as was applicable at the time they committed their crimes and faced sentencing. *See Weaver v. Graham*, 450 U.S. at 29–30, 101 S.Ct. at 964–965. Instead, the *Johnson* court appeared to have based its decision on what it believed, on the facts of the case before it, was the equitable result mandated by the due process clause. The *Johnson* analysis cannot be said to reflect what was a clearly established constitutional right at the time defendants revoked plaintiffs' good time credits.

In summary, no theory of defendants' alleged constitutional violation can defeat their claim of good faith immunity. The law was, and indeed remains, too unsettled: 1) the law was not clearly established that defendants could be liable regardless of foreseeability; 2) there was a reasonable basis for believing *Richmond* was foreseeable; and 3) the *Johnson* theory of a due process violation was not clearly established at the time of defendants' action. Under these circumstances defendants are entitled to good faith immunity under *Harlow*.

An order will be entered granting summary judgment to defendants.