**Michael L. LOVE, Plaintiff-Appellee,**

v.

**C. J. FITZHARRIS, Warden, California State Prison, San Quentin, and the People of the State of California, Defendants-Appellants.**

**No. 25806.**

United States Court of Appeals, Ninth Circuit.

May 25, 1972.

---

Gary Garfinkle, Deputy Atty. Gen. (argued), Derald E. Granberg, Deputy Atty. Gen., Thomas C. Lynch, Evelle J. Younger, Attys. Gen., San Francisco, Cal., for defendants-appellants.

Patrick Lynch (argued), Los Angeles, Cal., for plaintiff-appellee.

Before KOELSCH and HUFSTEDLER, Circuit Judges, and JAMESON,* District Judge.

PER CURIAM:

Michael Louis Love, the appellee, is a California state prisoner, serving consecutive sentences for two violations of Cal. Health & Safety Code § 11500.5 [posses-

---

* Honorable W. J. Jameson, Senior United States District Judge, Billings, Montana, sitting by designation.

sion of narcotics for sale]. This Code section provides that persons convicted "shall be punished by imprisonment in the state prison for not less than 5 years nor more than 15 years and shall not be eligible for release . . . on parole . . . until [they have] served not less than 2½ years in prison." Cal.Penal Code § 3049, the general parole statute, provides in part that a prisoner may be paroled at any time after the expiration of one-third of his minimum sentence.

The State Department of Corrections, at the time Love began serving his sentence, took the position that in cases of single sentences § 11500.5 fixed the time when a prisoner would be eligible for parole, but where consecutive sentences had been imposed § 3049 applied. Thus the Department, consistent with this view and following its usual practice, sent Love a formal "Notice of Legal Status" advising him that, on the basis of the combined minimum sentences of ten years on his two convictions, he would be eligible for parole in one-third of that time, that is, three years and four months.

However, shortly afterward, the Department, upon receiving an opinion of the Attorney General, reinterpreted the parole eligibility provisions with respect to consecutively sentenced narcotics offenders, and concluded that persons serving consecutive terms for violations of § 11500.5 would be eligible for parole only after serving 2½ years imprisonment on each consecutive sentence. The Department thereupon issued to Love a "corrected" Notice of Legal Status, informing him that his minimum parole eligibility was 5 years, not 3 years-4 months, as determined earlier.

After exhausting his state remedies, Love petitioned the District Court for a

writ of habeas corpus; he urged that the Department's application of its new parole eligibility criteria retroactively to his sentence violated the *ex post facto* and due process clauses of the United States Constitution. The District Court agreed, and ordered the state to restore his parole eligibility at 3 years-4 months. Love v. Fitzharris, 311 F.Supp. 702 (N.D.Cal.1970). The State appeals.

■ A law is *ex post facto* if it either "makes an action done before the passing of the law, and which was innocent when done, criminal * * * [or] aggravates a crime * * * [or] changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed * * *" Calder v. Bull, 3 U.S. (3 Dall) 386, 390, 1 L.Ed. 648 (1798). In Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), the Supreme Court held that a state statute which in effect increased the punishment for a crime committed prior to its enactment could not, under the *ex post facto* clause, be applied retroactively. See also, Greenfield v. Scafati, 277 F.Supp. 644 (D.Mass.1967, 3-judge court), aff'd per curiam, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968).

■ Under California law, a convicted person's eligibility for parole consideration (as opposed to parole) is part of the "law annexed to the crime when committed" within the meaning of Calder v. Bull, *supra*, and any legislative change in such eligibility which would work to a prisoner's disadvantage may not be retroactively applied. In re Griffin, 63 Cal.2d 757, 48 Cal.Rptr. 183, 408 P.2d 959 (1965).[1] The issue in this case is whether such a change in parole eligibility brought about, not by legislative action, but by administrative fiat, is within the *ex post facto* prohibition.

---

1. In Graham v. Thompson, 246 F.2d 805 (10th Cir. 1957), a case on which the state relies, the Tenth Circuit held that a new Utah sentencing law, applied to a prisoner previously sentenced, which changed the availability of good time, was not *ex post facto* because, under Utah law, the good time allowances provided for in the statute "were not part of his

sentence and thus not part of 'the law annexed to the crime, when committed.'" 246 F.2d at 807. Since California law, with respect to parole consideration, makes eligibility for consideration a part of the sentence, *Graham* supports the position of Love rather than that of the Department.

The Department of Corrections relies on this court's decision in In re Costello, 262 F.2d 214 (9th Cir. 1958). In *Costello* we held that no federal question was presented in cases where the Adult Authority, having initially fixed the term of imprisonment under the California indeterminate sentence law, thereafter increased the term upon cause shown. However, there we rested decision on the fact that the California courts had consistently held that an indeterminate sentence under California law was in substance a sentence for the maximum term provided for the offense, and that any term set by the Adult Authority within that limit was merely tentative and subject to reconsideration. See also, Lincoln v. California Adult Authority, 435 F.2d 133, 134 (9th Cir. 1970).

*Costello* is inapposite because there the Department was acting in an individual case within the authority well established by court decisions; but here the Department has changed its interpretation of the authority itself. The distinction is crucial. The relationship between the general penal code provisions dealing with parole eligibility for consecutively sentenced prisoners and the mandatory minimum imprisonment provision of § 11500.5 has not been considered by the California courts. Absent a court pronouncement on the matter, the interpretation of the relationship between the statutes placed upon them by the administrative agency charged with their enforcement has the force and effect of law. And, as the District Court pointed out, not only defendants, in contemplating their pleas, but also trial courts, in imposing sentences, are entitled to rely on such administrative interpretations. 311 F.Supp. at 703–704. Cf. Briscoe v. Kusper, 435 F.2d 1046, 1055 (7th Cir. 1970). A new administrative interpretation which subjects the prisoner already sentenced to more severe punishment has the same effect as a new statute lengthening his present term [Lindsey v. Washington, *supra*] or a new court decision making what was lawful when done a crime [Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)]; each "alters the situation of the accused to his disadvantage . . . ." [In re Medley, 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890)], and each is prohibited by the Constitution.

The judgment is affirmed.