Andrew G. HOLGUIN, Jr.,
Plaintiff-Appellant,

v.

Robert R. RAINES, Defendant-Appellee.

No. 80–5782.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1981.

Decided Dec. 23, 1982.

Dale A. Danneman, Lewis & Roca, Phoenix, Ariz., for plaintiff-appellant.

Rory C.H. Abate, Phoenix, Ariz., for defendant-appellee.

---

* Honorable Lawrence T. Lydick, United States District Judge, Central District of California, sitting by designation.

Before POOLE and REINHARDT, Circuit Judges, and LYDICK,* District Judge.

POOLE, Circuit Judge.

Appellant, Andrew Holguin, appeals the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2254. He contends that the district court erred in concluding that the Arizona Department of Correction's change in its method of calculating parole eligibility on consecutively imposed sentences, which applied retroactively to his detriment, did not violate the prohibition against *ex post facto* laws contained in the United States Constitution. We affirm.

## I.

On July 8, 1972, Holguin began serving three concurrent ten to twenty year sentences after conviction on three counts of assault with a deadly weapon. On February 28, 1973, Holguin received an additional sentence of nine to ten years for kidnapping to run consecutively with his earlier sentences for assault.

At the time of sentencing on both counts, the Arizona statute governing eligibility for parole provided:

> Every [p]risoner who has served one-third of the minimum sentence, computed without any time deductions credited, if he has served more than one calendar year, shall be given an opportunity to appear before the board and apply for releases upon parole.

Ariz.Rev.Stat. § 31–411(A)(1). The Arizona Department of Corrections, relying on a 1973 unpublished opinion of the Arizona Attorney General, determined parole eligibility for consecutive sentences by taking one-third of the total minimum terms of

imprisonment—adding the consecutive sentences together as if they were one continuous sentence. Using that approach, the Board calculated that Holguin would be eligible for parole on November 8, 1979.

In 1974, however, the Arizona Supreme Court, in *Mileham v. Arizona Board of Pardons and Prisons,* 110 Ariz. 470, 520 P.2d 840 (1974), interpreted section 31–411(A)(1) to hold that a prisoner serving a sentence for escape made consecutive to a robbery sentence became eligible for parole only after serving the complete sentence on the robbery conviction and one-third of the escape sentence. Subsequently, the Arizona Attorney General issued a new opinion, consistent with *Mileham,* that any prisoner sentenced to consecutive sentences would have to complete the first sentence and one-third of the second before being eligible for parole. Under this new approach, Holguin would have been eligible for consideration for parole on September 9, 1985.

In 1978, the Arizona legislature, responding to *Mileham,* amended the parole statute to provide that a person convicted of a crime committed prior to October 1, 1978, could be paroled from his sentence under that conviction to begin serving a second consecutive sentence. *See* 1978 Ariz.Sess. Laws ch. 164 § 30(B). Pursuant to this amendment, Holguin was paroled in November, 1980, from his first sentence to his nine to ten year consecutive sentence.[1] He thus would become eligible for parole on the consecutive sentence on November 4, 1983, some five years after the initial parole eligibility date.

After exhausting his State remedies, Holguin filed this federal habeas petition, claiming that the changes wrought by the Attorney General's new opinion and the subsequent legislative amendments violated the *ex post facto* clause of the United States Constitution. The district court dismissed the petition, concluding that the Attorney General's subsequent opinion was merely "a corrected interpretation of a state statute" based on the Arizona Supreme Court's decision in *Mileham* and therefore did not constitute an *ex post facto* enactment.[2]

## II.

The *ex post facto* provision of Article I, section 10 of the United States Constitution forbids the states from passing any law "which punishes as a crime an act previously committed which was innocent when done; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 325–26, 18 L.Ed. 356 (1867). *See also Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925); *Knapp v. Cardwell,* 667 F.2d 1253, 1262 (9th Cir.1981). The purpose of the prohibition is to provide fair warning of legislative statutes and to prevent arbitrary and oppressive legislation. *Weaver,* 450 U.S. at 28, 101 S.Ct. at 964; *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

In *Weaver v. Graham,* the Supreme Court held that a Florida statute which reduced the availability of gain time for good behavior in prison constituted an *ex post facto* law when applied to a prisoner who was convicted for a crime committed before the statute's enactment. The Court concluded that although the gain time provision was not technically part of the petitioner's sentence, it "substantially alter[ed] the consequences attached to a crime already completed." 450 U.S. at 33, 101 S.Ct. at 966.

1. Holguin became eligible for consideration for parole immediately upon the effective date of the new legislation, October 1, 1978. However, his first two requests for parole heard in November, 1978, and November, 1979, were denied.

2. Since the district court concluded that the initial recalculation of Holguin's parole eligibility survived *ex post facto* scrutiny it did not need to address whether the subsequent legislative amendments *reducing* the minimum term before Holguin was eligible for parole were *ex post facto. See Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2298–2299, 53 L.Ed.2d 344 (1977) ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than prior law.")

Holguin, relying on *Weaver,* argues that the Arizona Attorney General's change in its opinion regarding computation of parole eligibility, upon which the Department of Corrections relied in setting its policy, violated the *ex post facto* clause since it increased the minimum amount of time he would have to serve before being eligible for parole. In particular, Holguin points to this court's opinion in *Love v. Fitzharris,* 460 F.2d 382 (9th Cir.1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973). In *Love* the California Department of Corrections changed its interpretation of the California parole statute to increase the minimum term for prisoners serving consecutive sentences prior to eligibility for parole. The court found that the change violated the *ex post facto* provision, concluding that the *ex post facto* prohibition applies to retroactive administrative interpretations as well as legislative enactments.

Yet appellant's argument ignores the impact of the Arizona Supreme Court's decision in *Mileham v. Arizona Board of Pardons and Paroles,* 110 Ariz. 470, 520 P.2d 840 (1974). If, as the district court concluded, the result in *Mileham* required that the Attorney General change what had been an incorrect opinion regarding parole for consecutive sentences, then the *ex post facto* issue here is controlled by this court's opinion in *Mileham v. Simmons,* 588 F.2d 1279 (9th Cir.1979).

In *Mileham v. Simmons,* this court specifically held that the retroactive application of the Arizona Supreme Court's opinion in *Mileham v. Arizona Board of Pardons and Paroles* to recalculate parole eligibility did not violate *ex post facto* principles. To the extent that that rationale applies here, we are bound by our own rules. We distinguished between a change in an administrative interpretation of state law made by the agency itself, such as that found in *Love v. Fitzharris,* and a court decision authoritatively construing state law. In the latter case, we noted, the *ex post facto* clause by its own terms does not apply. 588 F.2d at 1280. *See Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). Nevertheless, we recognized that the principle of fair warning implicit in the *ex post facto* prohibition requires that judicial decisions interpreting existing law must have been foreseeable. *Id. See Marks,* 430 U.S. at 191–92, 97 S.Ct. at 992–993; *Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964); *Forman v. Wolff,* 590 F.2d 283, 285 (9th Cir. 1978) *cert. denied,* 442 U.S. 918, 99 S.Ct. 2839, 61 L.Ed.2d 285 (1979). The *Mileham v. Simmons* court concluded that the Arizona Supreme Court's decision satisfied the foreseeability requirement and therefore did not deprive that petitioner of fair warning. *Id.*[3]

The outcome of Holguin's case therefore turns on whether the changed Arizona Attorney General's opinion was merely a reflection of the Arizona Supreme Court's correcting statutory holding in *Mileham,* or whether it was an extension of *Mileham.* That in turn depends upon whether the Arizona court's *Mileham* opinion is limited to consecutive sentences imposed for escape convictions or applies generally to consecutive sentences. We conclude that the general interpretation is the correct analysis of the Arizona Supreme Court's holding.

From the beginning, the Arizona Supreme Court's opinion in *Mileham* treats sentences for escape convictions as part of

**3.** Holguin argues that the statement in *Mileham* that the petitioner "did not have a vested right in such an erroneous interpretation," 588 F.2d at 1280, indicates that the court's opinion is based on a "vested rights" analysis specifically disapproved by the Supreme Court in *Weaver v. Graham,* 450 U.S. at 30, 101 S.Ct. at 965 ("The presence or absence of an affirmative enforceable right is not relevant, however, to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred.")

Yet aside from the single inadvertent reference stated, the *Mileham* opinion does not rely on the theory that the petitioner did not have a vested right to parole eligibility. Instead, as suggested, it is based on the distinction between administrative and judicial interpretations of state law and the foreseeable character of the Arizona Supreme Court's decision in *Mileham.*

the larger category of consecutive sentences in general. Thus the Court states:

> Undoubtedly, the Legislature intended to increase the punishment of those who attempted to or escaped from the State Prison and, therefore the punishment for a violation of the escape statute is a sentence consecutive to the sentence or sentences the escapee was serving at the time of his escape or attempt.... When consecutive sentences are imposed, the subsequent sentence commences at the expiration of the prior sentence or sentences.

520 P.2d at 842. The Court then resolves the issue before it by looking to the applicability of the parole statute to consecutive sentences in general, concluding that since parole is "a service of the balance of the sentence outside the prison," 520 P.2d at 843, and a consecutive sentence may only begin at the expiration of the first sentence, the Board of Corrections could not parole any prisoner to begin a consecutive sentence.

In sum, it is not possible to limit the *Mileham* holding to consecutive sentences for escape convictions because the Court resolved the issue by deciding the application of the parole statute for *all* consecutive sentences. Therefore the Arizona Attorney General's opinion does no more than require the Department of Corrections to follow the dictates of *Mileham.* Under the circumstances, Holguin's reliance, if any, on the Attorney General's earlier erroneous interpretation of State law could not preclude the State court from judicially correcting that interpretation, *Mileham v. Simmons,* 588 F.2d at 1280,[4] and therefore the Depart-

ment of Corrections did not violate his constitutional rights in recalculating his parole eligibility.

Affirmed.

REINHARDT, Circuit Judge, dissenting.

I

Only the majority's unjustifiably broad reading of the Arizona Supreme Court's decision in *Mileham* serves as an arguable basis for its validation of the state's constitutionally impermissible attempt to restrict Appellant's eligibility for parole. A more careful and restrained analysis of *Mileham* leads to the inescapable conclusion that the State's conduct in this case violates the Constitution's prohibition against *ex post facto* punishment.

The *ex post facto* clause of the Constitution forbids legislation that operates to the "substantial disadvantage" of prisoners, whether or not the legislation is "technically an increase in the punishment annexed to the crime." *Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). In *Love v. Fitzharris,* 460 F.2d 382 (9th Cir.1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973), we emphasized that application of the *ex post facto* clause is not limited to acts of legislation. On the contrary, "[a] new administrative interpretation which subjects the prisoner already sentenced to more severe punishment has the same effect as a new statute lengthening his present term or a new court decision making what was lawful when done a/crime .... [E]ach is prohibited by the Constitution." 460 F.2d at 385

---

**4.** We do not interpret certain language in the Supreme Court's decision in *Weaver v. Graham* to mean, as Holguin suggests, that judicial decisions detrimentally affecting a prisoner's length of imprisonment may only be applied prospectively, whether they are foreseeable or not.

In examining the reason that the *ex post facto* clause is applicable to good time provisions, the Court in *Weaver* refers to "a prisoner's eligibility for reduced imprisonment" as a factor in both the defendant's decision to plea bargain and the judge's calculation of the sentence to impose. 450 U.S. at 32, 101 S.Ct. at 966.

However, as indicated, *Weaver* did not involve a *judicial* change in eligibility for reduced imprisonment. Nor is there any indication in the opinion that the Court intended that its earlier decisions regarding retroactive court decisions, upon which the court relied in *Mileham,* are inapplicable in the plea bargaining or sentencing context. Such an interpretation would suggest that a court could never retroactively correct a prior interpretation of state law advanced by a state agency, no matter how erroneous, if it affected the terms or length of imprisonment. We refuse to adopt such a rule.

(citations omitted). The interpretation of the statute by the administrative agency charged with its enforcement has "the force and effect of law." *Id.* Defendants are entitled to rely on administrative interpretations, including parole eligibility guidelines, when deciding whether to enter a guilty plea,[1] and trial judges consider such guidelines in concluding the sentence to be imposed. *See Weaver v. Graham,* 450 U.S. 24, 32, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981).

Our decision in *Love v. Fitzharris* requires that appellant's habeas corpus petition be granted. The facts of *Love* are identical in all important respects to those presented here. In *Love,* the administrative agency responsible for parole guidelines changed its method of computing parole eligibility after the petitioner was sentenced. The changes thus altered the legal consequences of acts committed before the new parole guidelines became effective. Consequently, we held that the application of the new parole regulations to the petitioner violated the constitution's prohibition against *ex post facto* punishment. The result should be the same in the case before us.

In the past we have said that there is a limited exception to the *Love* rule, and that increased punishment resulting from a new court pronouncement on a statute already in existence when a defendant was sentenced might not, under certain circumstances, constitute *ex post facto* punishment. *See Mileham v. Simmons,* 588 F.2d 1279, 1280 (9th Cir.1979).[2] The majority seizes upon this limited, and questionable, exception and holds that the new parole eligibility guidelines were the *direct* result of the Arizona Supreme Court's pronouncement in *Mileham* on an already existing statute. In doing so, the majority expands *Mileham* far beyond its holding and its intended scope.

In my view, the majority significantly rewrites the Arizona Supreme Court's decision and applies it to new issues and circumstances not before the Arizona court and to a different statute than the one construed by the court in that case. It does so after acknowledging that appellant must prevail if we are required to "extend" *Mileham* in order to rule against him. Yet *Mileham* decided only a single, very limited question: How should parole eligibility be determined for a prisoner convicted of an escape attempt under A.R.S. § 13–392? The court's explicitly circumscribed holding is that "a sentence for escape runs consecutive to an original sentence and therefore can commence only when the first sentence has been completely served." *Mileham v. Arizona Board of Pardons and Paroles,* 110 Ariz. 470, 471, 520 P.2d 840, 841 (1974). Nevertheless, the majority interprets *Mileham* as altering the way in which *all* consecutive sentencing statutes should be interpreted while claiming that it is merely applying, not extending, the *Mileham* holding. For four reasons, the majority's attempt to characterize its extension of *Mileham* as simply an application of a prior holding is unjustified.

First, the Arizona Supreme Court clearly limits its holding to the escape statute. Although some of the language in *Mileham* suggests that other consecutive sentencing statutes might be interpreted in the same way, the holding is not expanded beyond

1. Appellant Holquin pleaded guilty to two crimes in January 1973.

2. The *ex post facto* clause limits the powers of legislatures but does not, of its own force, apply to the judicial branch. *See, e.g., Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). Nonetheless, the principle of fair warning that is the foundation of the *ex post facto* clause does restrict the retroactive application of judicial decisions. *Marks,* 430 U.S. at 191, 97 S.Ct. at 992; *Forman v. Wolff,* 590 F.2d 283, 284 (9th Cir.1978).

For that reason, we have analyzed judicial decisions under the *ex post facto* clause in similar cases. *See, e.g., Mileham,* 588 F.2d at 1280; *Forman,* 590 F.2d at 284.

Because of the United States Supreme Court's recent application of the fair warning principle in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), I am doubtful that the limited exception we previously created in our *Mileham* opinion is still valid. *See infra* p. 374 .

the escape statute. Indeed, the court relies exclusively on the escape statute in justifying its decision. The court emphasizes that "the Legislature intended to increase the punishment of those who attempted to or escaped from the State Prison." *Id.* at 472, 520 P.2d at 842. As a result, the parole guidelines for prisoners convicted of escape had to be altered: "We conclude that the Legislature, by providing in the escape statute ... that a prisoner's term of imprisonment for escape commence at the time he would otherwise have been discharged from the prison, foreclosed any possibility that the prisoner may be released on parole." *Id.* at 473, 520 P.2d at 843. Moreover, the only precedent cited by the court to support its holding, *Ex parte Irwin,* 88 Cal. 169, 25 P. 1118 (1891), involves a similar California escape statute. In short, there should be no doubt that the *Mileham* holding is carefully limited to parole eligibility for prisoners sentenced under the escape statute.

Second, this court has already recognized the limited nature of the Arizona Supreme Court's holding. In denying Mileham's habeas corpus petition, we held that the escape statute, section 13–392, was "in effect when Mileham was convicted" of escape and that the Arizona Supreme Court had "now authoritatively construed the statute." *Mileham v. Simmons,* 588 F.2d 1279, 1280 (9th Cir.1979). In 1979, then, we did not find that the Arizona Supreme Court's *Mileham* holding applied to anything more than the escape statute, and there is no justification for our reaching a contrary result today.

Third, the Arizona Supreme Court was surely aware of the way parole eligibility guidelines were being interpreted at the time of its *Mileham* decision. If the court believed these interpretations were incorrect, it could easily have said so in *Mileham.* Instead of correcting the existing interpretations, however, the Arizona Supreme Court unequivocally limited its holding to the escape statute.

Fourth, the Arizona Supreme Court's decision in *Mileham* did not have the immediate effect of altering the administrative interpretation. On the contrary, the Arizona Attorney General did not change the parole eligibility guidelines until several years after the *Mileham* decision.[3] In the meantime, the state continued to apply the old guidelines. This significant delay is convincing proof that the *Mileham* holding was not perceived by Arizona officials, at least for a substantial period of time, as affecting anything more than the escape statute. Moreover, it demonstrates the fact that it was a subsequent change in administrative interpretation, rather than the *Mileham* decision alone, that caused the increased punishment in appellant's case.

In sum, the majority's reading of *Mileham* is completely unwarranted; the majority is extending not applying that decision. Because the Arizona Supreme Court's holding was limited only to the escape statute, the subsequent adverse administrative alterations in the parole guidelines cannot be constitutionally applied to prisoners sentenced before the changes were adopted. Appellant's imprisonment under parole guidelines that increase the time he must spend in prison before he is eligible for release and that were not in effect at the time he was sentenced offends the Constitution's prohibition against *ex post facto* punishment.

## II

There is a second and independent reason why I believe the majority's decision is incorrect. I have assumed in the preceding part of my dissent that the Arizona Supreme Court's holding in *Mileham* and our subsequent decision denying Mileham's habeas corpus petition are still valid despite the Supreme Court's recent decision in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). This assumption, which the majority accepts without question, is not necessarily warranted.

---

**3.** Although the Arizona Supreme Court's *Mileham* decision was handed down in 1974, the Attorney General did not alter the parole guidelines until November 15, 1977.

In *Weaver,* the Supreme Court considered a Florida law that reduced the amount of "gain time" for good conduct that could be deducted from a prisoner's sentence. The Court held that the statute was unconstitutional as an *ex post facto* law when applied to a prisoner whose crime was committed before the statute was enacted. 450 U.S. at 28–36, 101 S.Ct. at 964–968. The Court's holding calls the two *Mileham* decisions into serious question.

To begin with, the argument that Mileham had no "vested right" in an erroneous interpretation of an existing state statute is essential to the two *Mileham* decisions. *See, e.g., Mileham v. Simmons,* 588 F.2d 1279, 1280 (9th Cir.1979). In *Weaver,* however, the Supreme Court held that such vested rights considerations are not relevant: "When a court engages in *ex post facto* analysis, which is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, it is irrelevant whether the statutory change touches any vested rights." 450 U.S. at 30 n. 13, 101 S.Ct. at 964 n. 13. As the Seventh Circuit Court of Appeals recently affirmed, "the prisoner does not have to show that he had a vested right to be paroled. That showing would be necessary for a contract clause or due process challenge, but it is not relevant to an *ex post facto* claim." *Welsh v. Mizell,* 668 F.2d 328, 332 (7th Cir.1982).

Next, the *Weaver* decision emphasizes that what is "[c]ritical to relief" under an *ex post facto* analysis is not "an individual's right to less punishment" but "the lack of fair notice." 450 U.S. at 30, 101 S.Ct. at 965. There is no dispute that the right to fair notice is violated when the legislature alters the punishment after a defendant has committed a criminal act. Nor is there any dispute that fair notice is denied when there is an increase in a defendant's punishment as the result of a subsequent administrative interpretation of parole guidelines.

It is the same right to fair notice that is violated when a court subsequently reinterprets a statute or invalidates an administrative interpretation under which the defendant was sentenced and, as a result, his punishment is made more severe.[4] The fact that a court, rather than a legislature, is changing the interpretation of an existing statute, or a court, rather than an agency, is invalidating a prior administrative practice, appears to be wholly irrelevant under the principles enunciated in *Weaver.* In all of these instances, the new interpretations are "both retrospective and more onerous than the law in effect on the date of the offense." 450 U.S. at 30–31, 101 S.Ct. at 965 (footnote omitted). At least when the defendant, in deciding how to plead, and the judge, in calculating the sentence to be imposed, both rely on existing law, it seems to me no longer possible in light of *Weaver* to draw constitutionally significant distinctions between *post facto* judicial pronouncements and legislative enactments.

The principal argument for distinguishing subsequent court interpretations from new statutes or administrative interpretations is that the former, or at least some of the former, may be "foreseeable" and the latter are not. *See Mileham,* 588 F.2d at 1280. This always somewhat dubious distinction, however, is wholly unpersuasive after *Weaver.* The decisive question, according to the Supreme Court, is whether the altered statute or interpretation "changes the legal consequences of acts completed before its effective date." 450 U.S. at 31, 101 S.Ct. at 965.[5] There is no doubt that the effect of the new statutory interpretation here is to increase the punishment beyond that imposed by the trial judge during sentencing. In this context it makes little sense to argue that defendants and sentencing judges could or should "foresee" possible judicial changes in statutory interpretation. On the contrary, the existing law "is a significant factor enter-

---

4.  *See supra* note 2.

5.  We note that under *Weaver* the relevant date for determining whether an unconstitutional in-

crease in punishment has occurred is the date of the offense, not the date of sentencing. 450 U.S. at 33, 101 S.Ct. at 966.

ing into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." 450 U.S. at 32, 101 S.Ct. at 966. A defendant is entitled to rely on that existing law when deciding whether to plead guilty, just as is the sentencing judge when deciding what sentence he will impose. To say that they may so rely—except to the extent that the courts may subsequently change the rules—would create a substantial conflict with the *Weaver* principles.

Under *Weaver,* an existing administrative interpretation may not be changed retroactively to the substantial disadvantage of a prisoner. In my view, any such alteration in that interpretation—even if it results from a court pronouncement—may not constitutionally be applied to those already sentenced. Thus, *Weaver* provides an alternative reason why Appellant's habeas corpus petition should be granted.

I would grant the relief requested.