**Ray Mychel FENDER,
Petitioner–Appellant,**

v.

**Charles THOMPSON, Warden; Attorney General of the State of Virginia, Respondents–Appellees.**

No. 88–7223.

United States Court of Appeals,
Fourth Circuit.

Argued April 13, 1989.

Decided Aug. 24, 1989.

Barry Nakell, Chapel Hill, N.C., for petitioner-appellant.

Robert B. Condon, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Richmond, Va., on brief), for respondents-appellees.

Before PHILLIPS, MURNAGHAN and WILKINS, Circuit Judges.

PHILLIPS, Circuit Judge:

Ray Mychel Fender appeals the dismissal of his *pro se* petition for a writ of habeas corpus, wherein he challenged a formal order of the Virginia Department of Corrections (DOC or the Department) finding him permanently ineligible for parole. We reverse and remand for the issuance of a writ directing that the Department rescind its ineligibility determination.

I

In 1973, a Virginia state court found Fender guilty of various offenses and sentenced him to life imprisonment. At that time, the Virginia Code provided that Fender would become eligible for parole after serving fifteen years of the sentence. *See* Va.Code § 53–251(3) (1970). In 1985, however, the Virginia General Assembly amended the state's parole eligibility statute to provide that "[a]ny person sentenced to life imprisonment who escapes from a correctional facility or from any person in charge of his custody shall not be eligible for parole." Va.Code § 53.1–151(B) (1988).

In 1987, the appellant escaped from custody. Virginia authorities recaptured him, however, and Fender ultimately pleaded guilty to one count of escape and was sentenced to an additional prison term of three years, set to run consecutively to the original life sentence. Shortly thereafter, the Department issued an order finding that, pursuant to § 53.1–151(B), Fender was no longer eligible for parole.

After exhausting his state remedies, Fender filed the present habeas petition. He claimed that, at least as the Department applied it in his case, § 53.1–151(B) constituted an unconstitutional *ex post facto* law, inasmuch as it effectively changed the sentence on his original convictions from "life *with* possibility of parole" to "life *without* possibility of parole."

The district court rejected the argument out of hand. "The statute is not an additional punishment retroactively imposed on Fender for his 1973 crimes. Instead, it is a stiffened penalty for the later crime of escape, which occurred after the enactment of the statute." *Fender v. Thompson,* C/A No. 88–0322–R, slip op. at 7 (E.D.Va. August 19, 1988). In turn, and after disposing of various other claims not at issue here,[1] the court dismissed Fender's habeas petition. This appeal followed.

---

1. Fender's original habeas petition challenged the Virginia parole statute in general and the DOC's "ineligibility determination" in particular on several different grounds: (1) that § 53.1–151(B) was "unconstitutionally vague"; (2) that the imposition of a sentence of life

## II

■ The *ex post facto* clause [2] "forbids ... the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325–26, 18 L.Ed. 356 (1867)). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* 450 U.S. at 29, 101 S.Ct. at 964 (footnotes omitted).

■ There is no question—indeed the respondent does not dispute—that § 53.1–151(B) of the Virginia Code "disadvantages" Fender. Had the state's General Assembly not amended the statute, the petitioner would have been eligible for parole *on his 1973 convictions* after serving fifteen years of the original life sentence—notwithstanding his 1987 conviction for escape. Now, pursuant to the amendment, he is permanently ineligible for probationary release.

The dispositive question, therefore, is whether the challenged statute operates "retrospectively"—that is, whether it resulted in the imposition of an additional, post-conviction punishment for Fender's 1973 crimes. We recognize, of course, that there is a fine line to be drawn between constitutionally permissible recidivist statutes and prohibited *ex post facto* enactments. *See, e.g., Spencer v. Texas,* 385 U.S. 554, 559–60, 87 S.Ct. 648, 651–52, 17 L.Ed.2d 606 (1967). We are also persuaded, however, that the line is crossed by the statutory application here challenged. As applied to Fender and others similarly situated, § 53.1–151(B) expressly rescinded

preexisting parole eligibility—and to that extent ran afoul of the *ex post facto* clause.

The Supreme Court has expressly cautioned, albeit in *dicta,* that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the *ex post facto* clause ... of whether it imposed a 'greater or more severe *punishment* than was prescribed by law at the time of the ... offense.' " *Warden v. Marrero,* 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974) (quoting *Rooney v. North Dakota,* 196 U.S. 319, 325, 25 S.Ct. 264, 265–66, 49 L.Ed. 494 (1905)) (emphasis in original). Indeed, courts have repeatedly held that "parole eligibility is part of the law annexed to the crime at the time of a person's offense." *Schwartz v. Muncy,* 834 F.2d 396, 398 n. 8 (4th Cir.1987). *See also, e.g., Burnside v. White,* 760 F.2d 217, 220 (8th Cir.1985) ("There is no question that a new parole statute may alter the consequences attached to a crime for which a prisoner already has been sentenced; [and] to the degree that a statute does so, it has retrospective effect."); *Lerner v. Gill,* 751 F.2d 450, 454 (1st Cir.1985) ("parole eligibility is part of the 'law annexed to the crime' for ex post facto purposes"); *Beebe v. Phelps,* 650 F.2d 774, 777 (5th Cir. Unit A 1981) ("Since parole eligibility is considered an integral part of any sentence ..., official port-sentence [sic] action that delays eligibility for supervised release runs afoul of the *ex post facto* proscription.") (quoting *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir.1977)); *Rodriguez v. United States Parole Comm'n,* 594 F.2d 170, 176 (7th Cir.1979) (treating "possibility of parole as an element of 'punishment' "). In turn, they have unvaryingly refused to permit the retrospective application of new or amended statutes or administrative rules which purported, for example, to al-

---

imprisonment without possibility of parole constituted "cruel and unusual punishment" for the crime of escape; (3) that the "additional sentence" for which § 53.1–151(B) provided was imposed without due process; (4) that § 53.1–151(B) violated the equal protection clause of the fourteenth amendment, inasmuch as it did not apply to the "large majority" of

escapees; and (5) that, as applied, § 53.1–151(B) permitted the imposition of "retroactive" sentences, in violation of the *ex post facto* clause. On this appeal, Fender pursues only the last of these five claims.

**2.** U.S. Const. art. I, § 10, cl. 1.

ter preexisting criteria for the determination of parole eligibility, *Marshall v. Garrison,* 659 F.2d 440, 444–46 (4th Cir.1981); or revoke accrued "good time" credits upon the revocation of probationary release granted on the sentence for an offense committed before enactment of the statute, *Beebe,* 650 F.2d at 776–77, or, as a practical matter, simply rescind prior parole eligibility altogether. *Rodriguez,* 594 F.2d at 176.

The principle underlying each of these decisions is that the retrospective application of a statute modifying or revoking parole eligibility would, "[f]or prisoners who committed crimes before [the statute's] enactment ..., substantially alter[ ] the consequences attached to a crime already completed, and therefore change[ ] 'the quantum of punishment.'" *Weaver,* 450 U.S. at 33, 101 S.Ct. at 966–67 (citing *Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977)). That is, of course, what the statute as applied here effectively accomplishes. It is also, however, precisely what the *ex post facto* clause forbids.

Our recent decision in *Schwartz* illustrates the point in a way we consider dispositive here. In that case, the petitioner had been convicted of felonies on three separate occasions: once in 1968, once in 1978, and again in 1982. The immediate dispute involved his parole eligibility on the 1978 offense, for which he had been sentenced to twenty years in prison. In 1979, the Virginia General Assembly had enacted Va.Code § 53.1–151(A), which imposed certain restrictions on the parole eligibility of repeat offenders. In particular, it required that "third offenders" serve at least one-half of their original sentences before becoming eligible for parole. *Id.* § 53.1–151(A)(3). Schwartz had been paroled on the 1978 offense, but was of course returned to prison after his third conviction in 1982. Shortly thereafter, the Virginia Department of Corrections informed him that, pursuant to amended § 53.1–151(A)(3), he would be treated as a "third offender" for the purpose of computing his parole eligibility on the 1982 *and* 1978 offenses.

We held that the state's application of the amended statute to the computation of the petitioner's parole eligibility on the 1978 offense constituted a clear violation of the *ex post facto* clause.

The acts leading to Schwartz' 1978 conviction of course occurred prior to the 1979 change of the Virginia parole eligibility statute. Accordingly, the fixing of his parole eligibility date, which was part of his punishment, could not constitutionally be made "greater or more severe." Yet, if the new Virginia statute were applied to Schwartz, that is precisely what would occur. His parole eligibility will mature at a later date under the 1979 statute than it would have under the statute in place at the time of his 1978 conviction and the acts causing the 1978 conviction. It is, therefore, the old Virginia statute ... that should be applied in determining Schwartz' parole eligibility so far as his 1978 sentence is concerned.

*Schwartz,* 834 F.2d at 398 (footnote omitted). The proposition for which *Schwartz* stands, therefore, is this: statutes enacted or amended after a prisoner was sentenced cannot be applied to alter the conditions of or revoke his or her preexisting parole eligibility—notwithstanding that the conduct purportedly triggering application of the statute occurred after its enactment. As applied here, § 53.1–151(B) had that effect.

The Commonwealth seeks to avoid this constitutional difficulty by arguing: (1) that § 53.1–151(B) simply imposes enhanced punishment for the crime of "escape," in the same way that a recidivist statute imposes stiffer penalties for repeat offenders; and (2) that, in any event, the statute does not operate "retrospectively," inasmuch as it was enacted before the escape, and Fender was in turn "on notice" of the consequences of his later crime. In our view, however, *Schwartz* itself disposes of both claims. The "recidivist" statute at issue there also could be said merely to have fixed the consequences of a later crime. It did so in violation of the *ex post facto* clause, however, precisely because the "consequences" took the form of a *post*

*hoc* alteration of the punishment for an earlier offense. The petitioner in *Schwartz* was, moreover, no doubt "on notice" in the same sense that, as the respondent now claims, Fender was aware of the possible consequences of his escape. That fact did not affect our analysis, however, for the simple reason that there—as here—the challenged statute nevertheless accomplished an impermissible enhancement of the punishment for an earlier, unrelated crime.

For reasons perfectly consistent with the principles enunciated in *Schwartz,* other courts have repeatedly refused to sanction the retrospective application of statutes effectively indistinguishable from the parole eligibility provision challenged here. In *Beebe,* for example, the Fifth Circuit held that an amended Louisiana statute providing for the forfeiture of accrued "good time credits" upon parole revocation could not be applied to a prisoner first convicted before the statute was enacted, but paroled sometime thereafter. Significantly, the *Beebe* court also specifically rejected Louisiana's argument that retrospective application of the statute did not run afoul of the *ex post facto* clause because the petitioner was "on notice" of the consequences of any parole violation.

> The crucial issue here … is not that petitioner had notice that he would forfeit his accrued good time if he violated parole, but that the forfeiture provision, which was passed after the commission of the [first offense], alters his punishment for that offense to his disadvantage. The forfeiture is not a punishment for the second offense; the … prison

term is the punishment. Rather, the forfeiture of good time is a sanction that extends the time remaining on the petitioner's original sentence. The practical effect is a statutory increase in punishment for the first offense, enacted subsequent to the commission of the offense.

*Beebe,* 650 F.2d at 776.[3] Cf. *Rodriguez,* 594 F.2d at 176 (rejecting argument that defendant was "on notice" of changes in parole procedures and their substantive effect on ground that *ex post facto* clause looks to operative facts "at the time the [original] crime was committed"). Similarly, in *Greenfield v. Scafati,* 277 F.Supp. 644, 646 (D.Mass.1967) (cited with approval in *Weaver,* 450 U.S. at 32, 101 S.Ct. at 966), *aff'd summarily,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), a three-judge court unanimously held that an amended Massachusetts statute's prohibition on the accrual of "good time credits" during the first six months of a parole violator's reincarceration could not be applied to prisoners originally sentenced before the statute's effective date.

The respondent has directed our attention to no contrary authority. We therefore hold that, under the *ex post facto* clause of Article 1, Section 10, amended § 53.1–151(B) of the Virginia Code cannot be applied to revoke the petitioner's preexisting eligibility for parole on the life sentence imposed in connection with his 1973 convictions. On remand, the district court should in turn issue a writ directing that the Virginia Department of Corrections rescind its ineligibility determination and recompute the petitioner's parole eligibility date according to the statutory provisions

---

**3.** Here, as in *Beebe,* the punishment for the later crime was a fixed term of imprisonment: three years. Indeed, the Virginia Code limits the maximum sentence on any escape conviction to five years imprisonment. Va.Code §§ 18.2–478 and 18.2–10(f). Under the applicable penal statute, therefore, Fender simply could not have been sentenced on the 1987 escape conviction to "life without possibility of parole"—though that is precisely what the respondent contends was the effect of the 1985 amendments to the parole eligibility statute. Had the Virginia General Assembly chosen to do so, it could have enacted a pure "recidivist" statute and enhanced the penalty for escape by amending § 18.2–478. It did

not, however, and instead enacted legislation which here had the impermissible effect of enhancing punishment for a prior offense.

We think it worthy of note that the state has changed its position on this question. In the district court, the state argued that the petitioner's "sole punishment for escape was a sentence of three years…. He did not receive a sentence of life for the escape, [but instead] received a sentence of three years." Joint Appendix at 15–16. As indicated, however, the state now claims that the revocation under § 53.1–151(B) of Fender's parole eligibility constituted an "additional punishment" for the 1987 escape.

applicable as of the date of his original convictions.

## III

For the foregoing reasons, the judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

SO ORDERED.