945 F.2d 398
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Glen Warren EVANS, Petitioner-Appellant,
v.
Raymond M. MUNCY, Warden, Respondent-Appellee.
 No. 89-7864.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided Sept. 26, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CA-89-31-AM)
 Argued: Joseph A. Micallef, Third-Year Law Student, Post Conviction Assistance Project, Harold J. Krent, University of Virginia School of Law, Charlottesville, Va., for appellant; Robert H. Herring, Jr., Assistant Attorney General, Richmond, Va., for appellee.
 On Brief: Mary Sue Terry, Attorney General of Virginia, Richmond, Va., for appellee.
 E.D.Va.
 REVERSED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and JOSEPH H. YOUNG, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 This habeas corpus action arises out of Glen Warren Evans's initial conviction on several criminal charges in Virginia in 1981, and his escape and commission of new crimes in 1982. When Evans was convicted of escape and of these new crimes, the Virginia Department of Corrections recomputed his parole eligibility date for the 1981 convictions pursuant to Section 53.1-151 of the Virginia Code, with the result that the parole eligibility date was postponed for three years. We find that the Virginia parole eligibility statute, as applied to Evans, constituted an ex post facto law and violated Evans's right to due process of law. Therefore, we reverse the district court's granting of summary judgment in favor of the Commonwealth.
 
 I.
 
 2
 In 1976 and 1977, Glen Evans was convicted in Virginia for robbery and fraud-false statement. He was sentenced to serve ten years with seven suspended for the robbery and three years with two suspended for the fraud count.
 
 
 3
 In 1979, subsequent to Evans's sentencing, Virginia replaced former Virginia Code Section 53-251 with a new statute, Virginia Code Section 53.1-151. Whereas Section 53-251 had provided that persons convicted of felonies would be eligible for parole after serving onefourth of the term of imprisonment imposed, the new Section 53.1151 introduced the concept of requiring repeat offenders to serve longer portions of their sentence before becoming eligible for parole. Under the new statute, second and third offenders could not be eligible for parole until after serving, respectively, one-third and one-half of the term of imprisonment imposed.[1] Section 53.1-151 became effective as of July 1, 1979.
 
 
 4
 In March 1981 Evans escaped from the Department of Corrections (DOC). He was recaptured and returned in April 1981. Between August 21 and November 13, Evans was convicted for felonies he committed while at liberty after the escape. He was sentenced to serve a total of 18 years. In February 1982 Evans again escaped; he was recaptured in June. While at liberty after this second escape, Evans committed another series of felonies, of which he was convicted and for which he received a sentence of eleven years, six months.
 
 
 5
 In early 1983, the DOC gave Evans a recomputed parole eligibility date (PED), which was calculated using a second term felony indicator (FTI-2) for the 1981 convictions and a third term felony indicator (FTI-3) for the 1982 convictions. See Va.Code Ann. §§ 53.1151(A)(3), (4) (1991). The PED was calculated as October 27, 1990. Late in 1985, however, Evans received an "Update Sheet" with a new PED calculated to be October 9, 1993. The new PED was computed using an FTI-3 for both the 1981 and 1982 convictions.
 
 
 6
 In a habeas corpus petition filed in state court, Evans alleged that the DOC's 1985 recomputation of his PED for the 1981 convictions after his 1982 conviction for escape violated the due process and ex post facto clauses of the United States Constitution because it retroactively added an extra three years to the PED. Evans claimed that the DOC may only apply the increased indicator to the 1982 escape sentence and to any new sentences resulting from offenses committed at the time of, or after, the escape. The Virginia state courts summarily dismissed Evan's petition.
 
 
 7
 Evans then filed a habeas petition in the United States District Court for the Eastern District of Virginia at Alexandria, which likewise rejected his claims. The district court held that the statutory formula for calculating parole eligibility dates for third term felons under Section 53.1-151(A)(3) could be applied to all of Evans's unparoled convictions, including those for which he had previously been sentenced as a second-term felon, as long as Evans had not yet reached his PEDs on those sentences.
 
 
 8
 Evans now appeals to this court.
 
 II.
 
 9
 The constitutional ex post facto prohibition forbids the enactment of any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to the punishment then prescribed. U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. See Weaver v. Graham, 450 U.S. 24, 28 (1981) (citations omitted). The dual purposes of this prohibition are to assure that legislative acts give fair warning of their effect, permitting reliance on their meaning until it is explicitly changed, and to restrict governmental power by restraining arbitrary and potentially vindictive legislation. 450 U.S. at 28-29 (citations omitted).
 
 
 10
 In order for a criminal law to have ex post facto effect, it must exhibit two critical elements: (1) it must disadvantage the offender affected by it; and (2) it must be retrospective; i.e., it must apply to events occurring before its enactment in such a manner as to alter the legal consequences attached to a crime at the time the crime was completed. Weaver, supra, 450 U.S. at 29.
 
 
 11
 The DOC does not attempt to argue that its recomputation of Evan's pre-existing parole eligibility so as to add three years to his eventual PED does not disadvantage Evans. Therefore, the first prong of the ex post facto test is clearly satisfied.
 
 
 12
 The DOC instead contends that the Virginia statute cannot have ex post facto effect as to Evans because the statute was enacted prior to the commission of the 1981 and 1982 crimes at issue here. Thus, the DOC maintains, Evans was "on notice" of the consequences of his criminal offenses, in particular that his felony indicator would be advanced if he committed crimes while escaped from custody.
 
 
 13
 However, the precedent interpreting the ex post facto effect of criminal statutes places the primary emphasis on whether the statute impermissibly increased the punishment for an earlier crime, rather than on whether the statute placed the defendant "on notice." These cases indicate that a statute which attempts to impose retroactively a greater penalty than that imposed by the sentencing judge violates the ex post facto clause, regardless of whether the offender committed the offense after the statute's enactment. In a case similar to the one at hand, in which the Commonwealth argued as it does here that the defendant was put "on notice" by the amended statute, this court stated:
 
 
 14
 The petitioner in Schwartz was ... no doubt "on notice" in the same sense that, as the respondent now claims, Fender was aware of the possible consequences of his escape. That fact did not affect our analysis, however, for the simple reasons that there--as here--the challenged statute nevertheless accomplished an impermissible enhancement of the punishment for an earlier, unrelated crime. Fender v. Thompson, 883 F.2d 303, 307 (4th Cir.1989) (affirming Schwartz v. Muncy, 834 F.2d 396 (4th Cir.1987)). Likewise, the Fifth Circuit has noted:
 
 
 15
 The crucial issue here, however, is not that petitioner had notice that he would forfeit his accrued good time if he violated parole but that the forfeiture provision alters his punishment for that offense to his disadvantage.
 
 
 16
 Beebe v. Phelps, 650 F.2d 774, 776 (5th Cir.1981). See also United States v. Suarez, 911 F.2d 1016, 1022 (5th Cir.1990) (citing Lindsey v. Washington, 301 U.S. 397 (1937), for holding that lawmaker cannot retroactively foreclose even the possibility that a punishment would be lessened from that potentially available at time crime was committed).
 
 
 17
 The conditions of parole are part of the punishment fixed by the trial court at sentencing. See Warden v. Marrero, 417 U.S. 653, 658 (1974). This court has recognized that the PEDs contained in Section 53.1-151 are part of the punishment set by the sentencing judge. Fender, supra, 883 F.2d at 305; Schwartz, supra, 834 F.2d at 397. Since parole eligibility is considered an integral part of any sentence, see Warden, supra, 417 U.S. at 663, "official po[s]t-sentence action that delays eligibility for supervised release runs afoul of the ex post facto prohibition." Shepard v. Taylor, 556 F.2d 648, 654 (2d Cir.1977). See also Calder v. Bull, 3 U.S. (3 Dall.) 386 (1789) (a law is ex post facto if it changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed). If a state wishes to enact stricter recidivist statutes, it may thereby punish later crimes more severely than earlier ones. It may not, however, do so through the back door by adding punishment to a previous offense for which the punishment has been fixed. See Fender, supra, 883 F.2d at 306 (rejecting argument that statute was not retrospective because it was simply an enhanced punishment for the crime of escape, operating as any recidivist statute would by fixing the consequences of a later crime).
 
 
 18
 Assuming arguendo that Section 53.1-151 as it existed prior to the 1990 amendments gave Evans notice that he might be treated as a third-time offender for purposes of both of these convictions, it is nevertheless clear that the manner in which the DOC applied the statute to Evans had ex post facto effect.[2] See Weaver, supra, 450 U.S. at 31 (stressing that "it is the effect, not the form, of the law that determines whether it is ex post facto."). The DOC recomputed Evans's PED once in 1983, and again in 1985 on the basis of a change in administrative policy concerning the application of Section 53.1-151.[3] A change in administrative practice concerning application of a statute can violate the ex post facto clause. See e.g., Love v. Fitzharris, 460 F.2d 382, 385 (9th Cir.1972), vacated as moot, 409 U.S. 1100 (1973);[4] Knuck v. Wainwright, 759 F.2d 856, 859 (11th Cir.1985); Rodriguez v. United States Parole Comm'n, 594 F.2d 170, 174 (7th Cir.1979). In Love, the Ninth Circuit held that such administrative action is within the ex post facto prohibition when it would have the force of law, as it would when there is no judicial pronouncement on the matter by the courts of that state.[5] 460 F.2d at 385. The DOC's 1985 computation of Evans's PED constitutes an administrative interpretation of a parole eligibility statute applied retroactively and to Evans's disadvantage, as was the case in Love. This administrative action changed the legal consequences attached to Evans's crimes at the time they were committed, and thus at the time Evans committed his crimes he could not have had notice of the future consequences that would attach to them. See Weaver, supra, 450 U.S. at 31 ("The critical question is whether the law changes the legal consequences of acts completed before its effective date."). See also United States v. Suarez, supra, 911 F.2d at 1022 (although Sentencing Guidelines state that the court should apply those guidelines "in effect on the date the defendant is sentenced," even such constructive notice that the guidelines may change cannot override the constitutional prohibition against ex post facto laws); accord United States v. Morrow, 925 F.2d 779, 782 (4th Cir.1991); United States v. Underwood, --- F.2d ----, 1991 WL 118518 at 6 (10th Cir.1991); United States v. Fiala, 929 F.2d 285, 289 (7th Cir.1991).
 
 III.
 
 19
 The Virginia parole eligibility statute confers on the prisoner a liberty interest enforceable under the due process clause of the fourteenth amendment. Franklin v. Shields, 569 F.2d 784, 790 (4th Cir.1977), cert. denied, 435 U.S. 1003 (1978); Krawetz v. Murray, 742 F.Supp. 304, 306 (E.D.Va.1990); accord Wolff v. McDonnell, 418 US. 539, 557 (1974). The protection of the due process clause is invoked to ensure that the state-created right is not arbitrarily abrogated. 418 U.S. at 557; Jackson v. Shields, 438 F.Supp. 183, 184 (W.D.Va.1977).
 
 
 20
 When Evans was sentenced, his parole eligibility date was set by this state law. Parole eligibility is "part of the law annexed to the crime at the time of a person's offense" and thus must be considered a part of the punishment imposed. Fender, supra, 883 F.2d at 305; Schwartz, supra, 834 F.2d at 398 n. 8. The punishment set by the sentencing authority is the maximum that may be imposed for that offense. See Vines v. Muncy, 553 F.2d 342 (4th Cir.), cert. denied, 434 U.S. 851 (1977). The DOC's 1985 recomputation of Evans's PED for his 1981 and 1982 offenses violated due process because it enhanced his punishment beyond what the sentencing authority imposed and thus arbitrarily abrogated his state-created liberty interest in being considered for parole for those offenses. The Commonwealth may punish subsequent criminal conduct directly, but it cannot do so by increasing punishment for any prior offenses. Cf. Fender, supra, 883 F.2d 303 (even though state could punish escape from prison directly, it could not do so indirectly by augmenting the punishment for the underlying conviction).
 
 
 21
 The judgment of the district court is therefore
 
 
 22
 REVERSED.
 
 
 23
 MURNAGHAN, Circuit Judge, and JOSEPH H. YOUNG, District Judge, joined.
 
 
 
 [1]
 The pertinent portions of Section 53.1-151 provide as follows:
 A. Except as herein otherwise provided, every person convicted of a felony and sentenced and committed [by a court] under the laws of this Commonwealth to the Department of Corrections, [whether or not such person is physically received at a Department of Corrections facility] or as provided for in § 19.2-308.1:
 
 
 [1]
 For the first time, shall be eligible for parole after serving one-fourth of the term of imprisonment imposed, or after serving twelve years of the term of imprisonment imposed if one-fourth of the term of imprisonment imposed is more than twelve years;
 
 
 [2]
 For the second time, shall be eligible for parole after serving one-third of the term of imprisonment imposed, or after serving thirteen years of the term of imprisonment imposed if one-third of the term of imprisonment imposed is more than thirteen years;
 
 
 [3]
 For the third time, shall be eligible for parole after serving one-half of the term of imprisonment imposed, or after serving fourteen years of the term of imprisonment imposed if one-half of the term of imprisonment imposed is more than fourteen years;
 
 
 [4]
 For the fourth or subsequent time, shall be eligible for parole after serving three-fourths of the term of imprisonment imposed, or after serving fifteen years of the term of imprisonment imposed if three-fourths of the term of imprisonment imposed is more than fifteen years
 For the purposes of subdivisions 2, 3 and 4 of subsection A and for the purposes of subsections B1 and B2, prior commitments shall include commitments to a correctional facility under the laws of any state or of the United States for murder, rape, robbery by the presenting of firearms or other deadly weapon or manufacturing, selling, giving, distributing or possessing with the intent to manufacture, sell, give or distribute a controlled substance, if such would be a felony if committed in the Commonwealth, provided the current sentencing order contains a finding of such prior commitments. Only prior commission of a felony while in a correctional facility of the Commonwealth, of any other state or of the United States, shall be included in determining the number of times such person has been convicted, sentenced and committed for the purposes of subdivisions 2, 3 and 4 of subsection A. "At liberty" as used herein shall include not only freedom without any legal restraints, but shall also include release pending trial, sentencing or appeal, or release on probation or parole or escape. In the case of terms of imprisonment to be served consecutively, the total time imposed shall constitute the term of the imprisonment; in the case of terms of imprisonment to be served concurrently, the longest term imposed shall be the term of imprisonment. In any case in which a parolee commits an offense while on parole, only the sentence imposed for such offense and not the sentence or sentences or any part thereof from which he was paroled shall constitute the term of imprisonment.
 * * *
 I. The provisions of subdivisions 2, 3 and 4 of subsection A shall apply only to persons committed to the Department of Corrections on or after July 1, 1979 [but such persons' convictions and commitments shall include all felony convictions and commitments without regard to the date of such convictions and commitments].
 Va.Code Ann. § 53.1-151 (1991).
 NOTE: The bracketed portion of subsections A and I did not appear in the statute as it existed during the time of the events involved in this case. These amendments were made in 1991 and 1990, respectively.
 
 
 [2]
 We make no determination here concerning the constitutionality of Section 53.1-151 in its present, amended form
 
 
 [3]
 The DOC concedes that a change in interpretation of Section 53.1-151 occurred some time in 1983, but rather disingenuously asserts that there has been no claim that Evans's 1985 recalculation resulted from that change. Since Evans's 1985 PED differed from his 1983 PED on the same offenses, and no other factors had changed, it may fairly be assumed that the 1985 PED was a result of DOC's changed interpretation
 
 
 [4]
 The Ninth Circuit continues to view Love as binding authority. See, e.g., Holguin v. Raines, 695 F.2d 372, 374 (9th Cir.1982), cert. denied, 464 U.S. 896 (1983)
 
 
 [5]
 There appear to be no published decisions of the Virginia courts prior to 1981 construing Section 53.1-151 according to the interpretation the DOC began applying in 1983 (and which it applied to Evans in the 1985 recomputation). Cf. Schwartz v. Muncy, 834 F.2d 396, 397 n. 6 (4th Cir.1987). Schwartz, in which the defendant's recomputation occurred in 1983, may mark the first time the courts were confronted by the new interpretation. In that case, the defendant did not learn of the new interpretation after May of 1985. Id. at 397 n. 3. Therefore, it appears highly unlikely that the DOC relied on a judicial pronouncement supporting its interpretation of the statute when it recalculated Evans's PED in 1985